**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAFRI LF LLC d/b/a LOOKING GLASS RUNNERS, | |
| Plaintiff, | Civil Action No. 7:25-CV-07449 |
| vs. | **COMPLAINT** |
| ARIEL MURCHISON and SIGNED BY ARIEL LLC, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

The plaintiff Jafri LF LLC d/b/a Looking Glass Runners (the "Plaintiff") files this action against the defendants Ariel Murchison and Signed by Ariel, LLC (collectively the "Defendants," individually for Ariel Murchison "Murchison" and individually for Signed by Ariel LLC "Signed by Ariel") for theft of trade secrets and intellectual property in violation of 18 U.S.C. § 1836, et seq. (the "Defend Trade Secrets Act" or the "DTSA"), misappropriation of trade secrets under New York common law, breach of contract under New York Common Law, and unjust enrichment under New York Common Law. The Plaintiff seeks a declaratory judgment, a permanent injunction, and compensatory and punitive damages, including but not limited to the disgorgement of all profits derived by Murchison from her competing enterprise, Signed By Ariel, LLC (accessible at https://signedbyariel.com), related to notary, signing, or customer service business developed, marketed, or operated using the Plaintiff's confidential information, proprietary client lists, trade secrets, and goodwill. Plaintiff alleges the following upon information and belief:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the Plaintiff's claims. The United States District Courts have exclusive jurisdiction over actions brought under the Defend Trade Secrets Act pursuant to 18 U.S.C. § 1836(c) and otherwise have jurisdiction over federal statutory causes of action under 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over the Plaintiff's state and common law claims pursuant to 28 U.S.C. § 1367. The court also has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1391,  as a substantial part of the events giving rise to the claim occurred in the Southern District of New York, and because Murchison transacted business within the Southern District of New York.

## PARTIES

3. The Plaintiff is a New York limited liability company with a principal place of business at 420 Columbus Ave., Suite 112, Valhalla, NY 10595.

4. Murchison is an individual and former employee of the Plaintiff. On information and belief, Murchison resides at 1042 Streamside Dr., Cedar Hill, Texas 75109.

5. Signed by Ariel, LLC is a limited liability company with a place of business at 1801 N Hampton Rd Ste 425 # 1144 Desoto, TX 75115.

## FACTUAL BACKGROUND

6. The Plaintiff operates a notary and client services business, and it maintains proprietary databases of client contacts, pricing models, service records, and legal forms. These materials are

not publicly accessible and are protected by multiple layers of digital and contractual confidentiality.

7. Murchison was hired by the Plaintiff as a Remote Online Notary on or about February 24, 2025. Murchison entered into a valid and enforceable Confidential Information and Invention Assignment Agreement with the Plaintiff as a condition of her engagement as a Remote Online Notary. Under the terms of this agreement, Murchison expressly acknowledged and agreed that she would not disclose, use, or retain any confidential or proprietary information belonging to Plaintiff except as required for her authorized duties; that all inventions, improvements, and business developments conceived or derived from the Plaintiff's information or operations would be the sole property of Plaintiff; and that upon termination of her engagement, she would return or destroy all documents, materials, and data containing confidential information belonging to Plaintiff.

8. As a condition of her employment, Murchison received access to internal customer lists, scheduling platforms, rate sheets, and proprietary scripts used for customer interaction. During her engagement, Murchison serviced dozens of Plaintiff's clients located in New York and other states, thereby gaining access to their confidential information and business relationships.

9. Unbeknownst to the Plaintiff, Murchison was using her role to extract client data and contact customers to promote her own business, Signed by Ariel LLC, which she launched while still engaged with the Plaintiff. Murchison met with dozens of the Plaintiff's clients on multiple occasions.

10.    Upon information and belief, Murchison spoke to the Plaintiff's clients throughout her tenure with the Plaintiff to tell them to meet her "on the side" at notarize.com, where she also

conducted notary business and on her soon-to-be-launched personal website,

SignedByAriel.com.

11.     A few weeks into Murchison's employment, she asked to buy shares in Plaintiff's

business and have her investment deducted from her salary. The Plaintiff's manager drafted an

employee shares agreement (the "Agreement") and sent it to Murchison. The Plaintiff advised

Murchison to seek counsel regarding her fiduciary responsibilities to the Plaintiff once brought

on as a partner.

12.     Murchison repeatedly stated that she was going to sign the Agreement.  She also

claimed she was calling large businesses and attempting to sign them on as the Plaintiff's clients.

Specifically, she wanted to poach former clients of notarize.com and bring them on as the

Plaintiff's clients.  Upon information and belief, Murchison did none of those things for

Plaintiff's benefit.  During her employment, she instead reached out to large businesses and told

them she was a full-time remote notary for her own business and was attempting to earn their

business for signedbyariel.com.

13.     The Plaintiff relied on the Defendant's representations that she was reviewing the

Agreement and intended to sign on as a partner. The Plaintiff gave the Defendant access to

proprietary information including financial and trade secret information related to the strategy of

the Plaintiff to grow and expand.  This information is not generally known to the public and is

harbored on a secure Google drive that only employees and IT personnel can access.  The

Plaintiff tasked Murchison with drafting investor materials using said proprietary information.

14.     Murchison did, in fact, draft investor materials during her course of employment

with the Plaintiff.  She subsequently stole that information, along with email addresses and

contact information of the Plaintiff's clients, and abruptly resigned from the Plaintiff's

employment with no notice.

15.    The very day that Plaintiff received Murchison's resignation, the Plaintiff discovered

that Murchison had launched signedbyariel.com.

16.    The Plaintiff's investigation revealed that this website is a business owned by

Murchison and offers identical services as the Plaintiff.  Upon information and belief, Murchison

has been actively soliciting the Plaintiff's clients using stolen information.

**CAUSES OF ACTION**

**Count I**
**(Defend Trade Secrets Act**
**18 U.S.C. § 1831, et seq.)**
**Against All The Defendants**

17.    The Plaintiff realleges and hereby incorporates by reference each and every

allegation contained in the preceding paragraphs of this Complaint. By means of the acts,

practices, omissions, and conduct alleged above, these Defendants and each of them have

committed violations of 18 U.S.C. 1832 of the DTSA,which penalizes the following conduct:

> a) Whoever, with intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone.

> other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly –
> (1) steals, or without authorization, appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates or conveys such information;
> (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;
> (4) attempts to commit any offense described in paragraphs (1) through (3); or

(5) conspires with one or more persons to commit any offense
described in paragraphs (1) through (3), and one or more of such
persons do any act to effect the object of the conspiracy,
shall, except as provided in subsection (b), be fined under this title
or imprisoned not more than 10 years, or both.
(b) Any organization that commits any offense described in
subsection (a) shall be fined not more than the greater of
$5,000,000 or 3 times the value of the stolen trade secret to the
organization, including expenses for research and design and other
costs of reproducing the trade secret that the organization has
avoided.

18.    The prohibitions of the DTSA apply to conduct occurring within and outside the

United States if (1) the offender is a natural person who is a citizen or permanent resident alien

of the United States, or an organization organized under the laws of the United States or a State

or political subdivision thereof; or (2) an act in furtherance of the offense was committed in the

United States. 18 U.S.C. § 1837.

19.    The DTSA authorizes the owner of a trade secret that is misappropriated to bring a

civil action to defend it if the trade secret is related to a product or service used in, or intended

for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b).

20.     Murchison was employed by the Plaintiff as a Remote Online Notary and was

granted access to the Plaintiff's confidential internal systems, including client lists, sales lists,

pitch decks, scheduling platforms, rate sheets, and client communication templates—materials

that constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).

21.    These materials derive independent economic value from not being generally known

to the public or to competitors, as they contain proprietary information about potential and

existing clients, tested marketing approaches, and pricing strategies. These trade secrets relate to

services used in interstate commerce, as the Plaintiff's notarial business regularly serves clients

across multiple states through remote, internet-based platforms. The Plaintiff took reasonable

measures to protect the secrecy of its trade secrets, including limiting access to internal systems

to credentialed contractors, requiring platform logins,  prohibiting the disclosure or use of client data outside the scope of assigned tasks and having contractors or employees sign a confidential information and invention assignment agreement.

22.     Upon information and belief, Murchison sought and accepted engagement with the Plaintiff for the ulterior purpose of misappropriating its trade secrets and diverting clients. While still engaged by the Plaintiff, Murchison misappropriated these trade secrets with the intent to use them for her own economic benefit and to the detriment of the Plaintiff. Upon information and belief, Murchison accessed and copied the Plaintiff's proprietary customer data and used that data to build her competing business (*Signed By Ariel*, https://signedbyariel.com), soliciting the Plaintiff's clients directly using information known only to her through her work while employed by the Plaintiff.

23.     Murchison's conduct constitutes misappropriation under 18 U.S.C. § 1836(b) because she knowingly and without authorization:

(1) appropriated and copied protected business data for use outside the scope of her engagement;

(2) transmitted and communicated trade secret information to unauthorized recipients, including herself and her new venture; and

(3) used the trade secrets to solicit the Plaintiff's clients and build market share for a competing enterprise.

24.     Murchison is a natural person residing in the United States, and all relevant acts of misappropriation were committed within the United States. The Plaintiff has suffered economic harm as a direct result of Murchison's actions, including the loss of clients, dilution of goodwill, and the unjust enrichment of the Defendant through the use of the Plaintiff's proprietary materials.

25.    Accordingly, the Murchison's conduct falls squarely within the scope of the Defend Trade Secrets Act, and Plaintiff is entitled to injunctive relief, compensatory damages, exemplary damages for willful and malicious misappropriation, and attorneys' fees and costs.

**Count II**
**Trade Secret Misappropriation**
**(New York Common Law)**
**Against All The Defendants**

26.    The Plaintiff realleges and hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

27.    The elements of a cause of action to recover damages for trade secret misappropriation under New York law are: (1) possession of a trade secret; and (2) use of that trade secret by the defendant in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.

28.    The Plaintiff owned and maintained trade secrets, including client lists, sales lists, pitch decks, contact information, internal scheduling protocols, communication templates, rate structures, and platform access procedures. These materials were developed through significant investment, are not publicly available, and are critical to the Plaintiff's competitive position in the remote notarial services market. Accordingly, they constitute trade secrets under New York law. These materials derive independent economic value from not being generally known to competitors or the public, as they contain proprietary information about potential and existing clients, tested marketing strategies, and pricing structures developed through significant investment.

29.    Murchison was engaged by the Plaintiff as a Remote Online Notary and was granted limited access to these trade secrets solely for the purpose of performing notarizations on behalf of the Plaintiff. Murchison was bound by an implied duty of loyalty and a confidential

relationship arising from her role, and her access to the Plaintiff's internal systems was conditioned on using that access solely for the benefit of the Plaintiff's business.

30.     Without authorization and in breach of that duty,Murchison misappropriated the Plaintiff's trade secrets and used them to establish and promote her own competing business, *Signed By Ariel*. Upon information and belief, the Defendant sought and accepted engagement with the Plaintiff for the ulterior purpose of misappropriating its trade secrets and diverting clients to her own competing venture. Upon information and belief, Murchison copied and retained customer data belonging to the Plaintiff, and has since solicited the Plaintiff clients using the very same trade secret information Murchison acquired during her engagement.

31.     Murchison's conduct was undertaken with knowledge of the confidential nature of the information and with the intent to convert that information for her own benefit. Murchison's acquisition and use of the trade secrets were made in breach of the confidential relationship and constitute misappropriation under New York law.

32.     As a result of Murchison's wrongful conduct, the Plaintiff has suffered damages including, but not limited to, lost business opportunities, client attrition, and unjust enrichment by the Defendants. The Plaintiff is therefore entitled to monetary damages and equitable relief to prevent any further use or dissemination of its trade secrets.

**COUNT III**
**Breach of Contract**
**(New York Common Law)**
**Against All The Defendants**

33.     The Plaintiff realleges and hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

34.     Murchison entered into a valid and enforceable Confidential Information and Invention Assignment Agreement with the Plaintiff as a condition of her engagement as a

Remote Online Notary. Under the terms of this agreement, Murchison expressly acknowledged and agreed that:

- She would not disclose, use, or retain any confidential or proprietary information belonging to Plaintiff except as required for her authorized duties;

- All inventions, improvements, and business developments conceived or derived from the Plaintiff's information or operations would be the sole property of Plaintiff; and

- Upon termination of her engagement, she would return or destroy all documents, materials, and data containing confidential information belonging to Plaintiff.

35.     The Plaintiff fully performed all obligations required of it under the agreement, including compensating Murchison and providing her access to internal systems solely for the purpose of performing her notarial duties.

36.     Upon information and belief, Murchison sought and accepted engagement with the Plaintiff for the ulterior purpose of misappropriating its confidential and trade secret information to divert clients and establish her competing business. The Defendant materially breached the agreement by Retaining and misusing the Plaintiff's confidential information including client lists, sales lists, pitch decks, internal scheduling protocols, communication templates, rate structures, and platform access procedures after the termination of her engagement; Using Plaintiff's proprietary client data, internal processes, and templates to establish and operate a directly competing business, *Signed By Ariel*; Soliciting the Plaintiff's customers using trade secret and confidential information obtained through her access to the Plaintiff's systems; and Failing to return or delete confidential materials in her possession after the termination of the relationship.

37.    As a direct and proximate result of the Murchison's breach of the Agreement, these materials derive independent economic value from not being generally known to the public or competitors, containing proprietary client information, marketing strategies, and pricing data developed through significant investment and used to maintain a competitive advantage in the remote notarial services market. The Plaintiff has suffered substantial damages, including loss of business, diversion of clients, and dilution of proprietary information and goodwill. The Plaintiff is entitled to recover compensatory damages in an amount to be determined at trial, as well as injunctive relief preventing Defendant from any further use or disclosure of confidential information in violation of the Agreement.

**COUNT IV**
**Unjust Enrichment**
**(New York Common Law)**
**Against All The Defendants**

38.    The Plaintiff realleges and hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

39.    Murchison, through her role as a Remote Online Notary for the Plaintiff, was entrusted with access to confidential business information including proprietary client lists, sales lists, pitch decks, internal procedures, pricing structures, and scheduling tools, which were developed and maintained by the Plaintiff at considerable time, effort, and expense, which were developed and maintained by the Plaintiff at considerable time, effort, and expense.

40.    Upon information and belief, Murchison sought and accepted her role with the Plaintiff for the ulterior purpose of misappropriating its confidential information and diverting clients to her competing venture. Murchison misappropriated that confidential and proprietary information and used it to establish and operate her competing business, *Signed By Ariel*, thereby securing a commercial advantage and generating revenue that she would not have obtained but

for her unauthorized use of the Plaintiff's property. These materials derive independent economic value from not being generally known to competitors or the public, as they incorporate proprietary client information, marketing strategies, and pricing data developed through significant investment to give the Plaintiff a competitive advantage.

41.    As a direct result of her misconduct, the Defendants have been unjustly enriched by profiting from the use of the Plaintiff's trade secrets, customer relationships, and goodwill, without compensating the Plaintiff for the value of the information taken or the business diverted.

42.    It would be against equity and good conscience to allow Defendant to retain the benefits she has derived from the Plaintiff's proprietary materials and business relationships.

43.    Accordingly, Plaintiff is entitled to restitution and disgorgement of all revenues, profits, and other benefits wrongfully obtained by Defendant as a result of her unjust enrichment.

**COUNT V**
**Declaratory Relief**
**(28 U.S.C. § 2201 –**
**Declaratory Judgment Act)**
**Against All The Defendants**

44.    The Plaintiff realleges and hereby incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

45.    An actual and justiciable controversy exists between the Plaintiff  and the Defendants regarding Murchison's misappropriation and continued use of the Plaintiff's confidential and proprietary information, including client lists, sales lists, pitch decks, internal procedures, pricing structures, and customer data.

46.    The Plaintiff contends, and on information and belief,  that the Defendants deny, that they have violated the Defend Trade Secrets Act, the Computer Fraud and Abuse Act, her contractual obligations, and common law duties owed to the Plaintiff. The Plaintiff also contends

that the Defendant has no legal right to use or benefit from the trade secrets and confidential

information she obtained through her prior relationship with the Plaintiff. These trade secrets and

confidential materials derive independent economic value from not being generally known to

competitors or the public, as they embody proprietary client information, marketing strategies,

and pricing data developed through significant investment to secure and maintain the Plaintiff's

competitive advantage.

47.    Upon information and belief, Murchison sought and accepted her engagement with

the Plaintiff for the ulterior purpose of misappropriating its trade secrets and diverting clients to

her competing venture. Accordingly, pursuant to 28 U.S.C. § 2201, Plaintiff seeks a judicial

declaration that:

1. The Plaintiff is the sole owner of the trade secrets and confidential information at issue;

2. Murchison has no right, title, or interest in any of Plaintiff's trade secrets, proprietary

   data, or customer information;

3. The Defendant has misappropriated such information in violation of federal and state

   law; and

4. The Defendant is not permitted to use or disclose Plaintiff's confidential information,

   directly or indirectly, for any purpose.

48.    A declaratory judgment is necessary and appropriate to resolve this dispute and to

prevent further harm to Plaintiff's legal and economic interests.

## COUNT VII
### Injunctive Relief
### (Federal and State Law – DTSA, CFAA, and
### Common Law)
### Against All The Defendants

49.    The Plaintiff realleges and hereby incorporates by reference each and every

allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein

50.    The Defendants' ongoing and unauthorized use of the Plaintiff's confidential and proprietary business information, including client lists, sales lists, pitch decks, internal procedures, pricing structures, customer data, and other trade secrets constitutes a continuing violation of the Defend Trade Secrets Act  and New York common law.

51.    These materials derive independent economic value from not being generally known to competitors or the public, as they reflect proprietary client relationships, marketing strategies, and pricing data that were developed through substantial investment to secure the Plaintiff's competitive position in the market. Unless enjoined, the Defendants will continue to unlawfully use Plaintiff's trade secrets, confidential information, and customer data, causing the Plaintiff immediate and irreparable harm that cannot be adequately remedied by monetary damages alone.

52.    Upon information and belief, the Murchison sought and accepted her engagement with the Plaintiff for the ulterior purpose of misappropriating confidential information and diverting clients to her competing venture, and she continues to exploit that information for her own benefit. The Plaintiff therefore seeks a preliminary and permanent injunction: Restraining Defendants from accessing, using, disclosing, or sharing any of Plaintiff's trade secrets or confidential information; Requiring the Defendants to return or destroy all documents and data in her possession that contain or reflect the Plaintiff's proprietary information; Enjoining the Defendants from directly or indirectly soliciting, contacting, or doing business with any client of the Plaintiff whose information was obtained through her while employed by the Plaintiff; and Enjoining Defendant from continuing to operate her competing business to the extent it is based on or benefits from Plaintiff's misappropriated trade secrets and proprietary information.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant, and grant the following relief:

1. Declaratory Judgment that:

   ○ The Plaintiff is the sole owner of all trade secrets and confidential business information at issue;

   ○ The Defendants has no legal right to use, retain, or benefit from Plaintiff's proprietary materials;

   ○ The Defendant has misappropriated Plaintiff's trade secrets and confidential information in violation of federal and state law.

2. Preliminary and Permanent Injunctive Relief enjoining the Defendant from:

   ○ Accessing, using, disclosing, or retaining any of Plaintiff's trade secrets or confidential business information;

   ○ Soliciting or communicating with Plaintiff's clients identified or acquired through misappropriated materials;

   ○ Operating any competing business, including *Signed By Ariel*, to the extent that it is derived from or benefits from Plaintiff's trade secrets.

3. Compensatory Damages in an amount to be determined at trial, including damages for:

   ○ Loss of business and customers;

   ○ Diversion of revenue;

   ○ Dilution of goodwill and proprietary value.

4. Disgorgement of all profits, revenues, and other benefits obtained by Defendant from the use of Plaintiff's trade secrets and confidential information.

5. Exemplary and Punitive Damages for willful and malicious misappropriation of trade secrets.

6. Attorneys' Fees and Costs.

7.  Such other and further relief as the Court deems just and proper.


Dated: September 17, 2025.


Attorney for Plaintiff,

*/s/ Farva Scott*
Farva Scott, Esq.
Bar No.5724166
420 Columbus Avenue  Suite 112
Valhalla,NY,10595
Tel: (914) 417-9215
farvastra@gmail.com